## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **JESSICA MORRIS CHRISTENSEN,**<br>individually and on behalf of similarly situated persons,<br><br>     Plaintiff,<br><br>  **v.**<br><br>**BB&C ENTERPRISES, LLC d/b/a "Domino's Pizza"**<br><br>     Defendant. | **Case No. 7:19-cv-792** |

---

## UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

---

Plaintiff, Jessica Morris Christensen, individually and on behalf of similarly situated persons ("Plaintiff" or "Named Plaintiff"), by and through her undersigned counsel, respectfully requests that this Court grant final approval of the Settlement and Release Agreement ("Agreement") reached by the Parties to this action. As set forth below, the Agreement is fair, reasonable and adequate, and should be approved by the Court.  Accordingly, Plaintiffs respectfully requests the Court issue an Order:

(1) Certifying the following class for settlement purposes:

All delivery drivers who worked for Defendant during the period of November 26, 2016 to November 9, 2021.

(2) approving the Settlement Agreement as a fair, reasonable, and adequate compromise of the Parties' disputes;

(3) approving of the proposed distribution to the FLSA Class Members and the Rule 23 Class Members in accordance with the Settlement Agreement (DKT 42-1);

(4) approving service award payments to the Class Representatives;

(5)     approving payment of the actual costs of the Settlement Claims Administrator in an amount not to exceed $10,000.00;

(6)     approving attorneys' fees to Class Counsel in the amount of $75,000.00 and reimbursement of Collective Counsel's actual costs and litigation expenses to date, which are less than $10,000.00; and

(7)     dismissing the Action with prejudice in accordance with the terms of the Agreement with the Court to retain jurisdiction over the implementation, administration, enforcement of this judgment and the Settlement Agreement, and all matters ancillary thereto.

I.      **INTRODUCTION**.

This lawsuit for unpaid minimum wages against Defendant was settled following a mediation between the Parties, subject to the Court's approval. On November 9, 2021, the Court preliminarily approved the Parties' Settlement and issued an Order that:

(1)     authorized the Parties to send notice of the Agreement to a group of similarly situated individuals consisting of:

> All delivery drivers who worked for Defendant during the period of November 26, 2016 to November 9, 2021.

(2)     approved the Notice of Class Action Settlement and proposed Claim Form as set forth as an exhibit to the Agreement;

(3)     authorized for a third-party Settlement Claims Administrator, as agreed to by the Parties pursuant to the terms of the proposed Agreement, to send notices to all Delivery Drivers containing the Court's approved Notice, Claim Form, and a postage paid return envelope addressed to the Settlement Claims Administrator pursuant to the terms of the Agreement;

(4)     approved the proposed schedule and procedure for the final approval of the proposed Agreement.

Pursuant to the Court's Order dated November 9, 2021, the Parties notified all Class

Members of the date and time of the Fairness Hearing, along with contact information to obtain additional information regarding the Fairness Hearing. The Parties have fully complied with the terms of the Court's Order. There are no objections to the Agreement. *See* Exhibit 1, Declaration of Jeffrey Johnson of the Third Party Administrator, CAC Services Group, LLC, ¶ 13 and Exhibit 3, the final settlement notice status report. Similarly, no Delivery Driver or Class Member has requested to participate in the Fairness Hearing. *See* Exhibit 2, Declaration of Plaintiff's Counsel Jay Forester, ¶ 5. Pursuant to the terms of the Settlement, Defendant does not oppose this Motion, or the relief sought. For the additional reasons set forth below, the Court should grant the Motion.

## II.    **BACKGROUND.**

Plaintiff filed this lawsuit ("the Litigation") on behalf of herself and similarly situated Delivery Drivers who were hired to deliver pizzas for Defendant. Plaintiff alleges Defendant violated the Fair Labor Standards Act ("FLSA") and Virginia state law by failing to pay her and other similarly situated Delivery Drivers the lawful and applicable minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendant. The Parties participated in an alternative dispute resolution ("ADR") process that included a full-day in-person mediation before retired Magistrate Judge, Hon. Bradford Stillman (ret., E.D. Va.), who is also an experienced wage and hour class and collective action mediator. Prior to the mediation, the Parties engaged in discovery that included the production of mileage and mileage reimbursement data for each of the Putative Class Members.  In preparation for the mediation, the Parties prepared detailed mediation statements and damages analyses. Based on this information, Plaintiff was able to review, analyze and formulate potential damage calculations on a class wide basis. Utilizing these calculations, Plaintiff concluded she had sufficient information concerning Plaintiff's claims and Defendant's defenses from which to reach a fair settlement of this matter. At the mediation, the Parties settled this putative class and collective action in principle. The Parties' settlement, which received additional direction from this Court in the months that followed,

was later amended, and preliminarily approved by the Court.

The Agreement provides an excellent outcome for the FLSA and Rule 23 Class Members. Defendant contends that its reimbursements to Delivery Drivers are reasonable approximations of their automobile expenses and do not cause Delivery Drivers' wages to fall below the minimum wage. Defendant further contends that even if liability were established, which they deny, they acted in good faith and that a two-year, as opposed to an extended statute of limitations should apply to Plaintiff's claims. If the Court were to accept these arguments, it would negate a substantial percentage, or all of the alleged damages in the case and disqualify a large number of Delivery Drivers who were employed by Defendant outside of the two-year federal statutory period.

Notwithstanding these defenses, Plaintiff was able to obtain a recovery for all eligible Delivery Driver Settlement Class Members who were employed by Defendant during the three-year period preceding the filing of the Complaint. Plaintiff respectfully submits that this Motion should be granted because the proposed Agreement satisfies all of the criteria for approval and falls well within the range of reasonableness.

## III.   <u>THE TERMS OF THE AGREEMENT</u>.

The Parties negotiated the Agreement on behalf of a Settlement Class of Delivery Drivers defined as:

> All delivery drivers who worked for Defendant during the period of November 26, 2016 to November 9, 2021.

The Agreement allowed Delivery Drivers to participate in the settlement, on an opt-in or claims-made basis, pursuant to this Court's Order.  This provided for recovery under the collective action procedure of the FLSA. The Agreement then provides that even those Delivery Drivers who did not to opt-in would still be eligible for a monetary recovery with respect to their state law claims under Rule 23. Finally and following the initial distribution of settlement funds, the Settlement has set aside Contingent Funds and a procedure through which eligible drivers may continue to claim their individualized, *pro rata* share of FLSA funds and to address administrative issues, like unclaimed

4

or stale checks, without necessitating additional litigation. Following the second settlement notice round, zero drivers opted-out of the settlement and zero objections to the settlement were filed.

Pursuant to the Agreement, the Settlement Amount is $225,000.00. If approved by the Court, the Net Settlement Fund is $125,000.00, which reflects the total amount allocated to Delivery Drivers after the subtraction of the Settlement Administrator fees and costs, Court-approved service awards to the Class Representatives, and Court-approved attorney's fees and costs for Class Counsel from the Settlement Amount. Pursuant to the Agreement, the distribution of the Settlement Amount is as follows:

1.  The Class Representatives that initially opted-in to this matter and the 102 individuals that submitted claim forms during the settlement notice period (collectively the "FLSA Class Members"), will receive a *pro rata* share of the $90,000.00 FLSA Claim Fund based on the total delivery miles driven by each FLSA Class Member;

2.  The remaining 583 individuals who have chosen neither to participate as FLSA Class Members nor opt-out of the Settlement (collectively the "Rule 23 Class Members"), will receive an average share of the $25,000.00 Rule 23 Fund or an approximate minimum payment of $42.88;

3.  The Settlement Claims Administrator, CAC Services Group, LLC, will receive an amount not to exceed $10,000.00;

4.  The Named Plaintiff and initial opt-in Class Representatives will receive $5,000.00 as service awards in recognition of the work involved and the benefits achieved by them on behalf of the Class Members;

5.  Class Counsel will receive $75,000.00 in attorneys' fees and be reimbursed advanced litigation costs and expenses in an amount not to exceed $10,000.00; and,

6.  Any amounts of the Net Settlement Fund representing the funds attributable to stale

checks (those unclaimed 180 days after the initial mailing), will be held in a QSF as part of the $10,000.00 Contingent Fund, to be available for late claims or to reissue stale checks during the Contingent Fund Period, with unclaimed amounts after the three-year Contingent Fund Period to be retained by Defendant.

## IV.     <u>THE COURT SHOULD APPROVE THE AGREEMENT</u>.

In the Fourth Circuit, there is a two-step process to determine whether a proposed settlement conforms to the requirements of Federal Rule of Civil Procedure 23(e) by considering: (1) fairness, which focuses on whether the proposed settlement was negotiated at arm's length; and (2) adequacy, which focuses on whether the consideration provided to the class members is sufficient. *McLaurin v. Prestage Foods, Inc.*, 2011 WL 13146422, *3 (E.D.N.C. Nov. 9, 2011) (*citing In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011) (same). This Court has already preliminarily approved the proposed settlement and Class Members have received noticed of the proposed settlement. Zero Class Members have objected to the settlement. Similarly, zero opt-outs were received. The Court should finally approve the settlement for the additional reasons that follow.

### A.     Standard for Final Approval of Class Settlements.

Public policy strongly favors the settlement of disputes without litigation. *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 411 (D. Md. 2014)*; Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). Accordingly, settlement agreements should be upheld whenever equitable and policy considerations so permit. *Silicon Image, Inc. v. Genesis Microchip, Inc.*, 271 F. Supp. 2d 840, 846 (E.D. Va. 2003), *aff'd*, 176 Fed. Appx. 109 (Fed. Cir. 2006) (*citing Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.1976)). This is especially true in class action litigation, in which there is a strong presumption in favor of class action settlements. *Clark v. Duke Univ.*, No. 1:16-CV-1044, 2019 WL 2588029, at *4 (M.D.N.C. June 24,

2019) (citing 4 Newberg on Class Actions § 13:44 (5th ed.)) (noting that the law generally favors

settlement, particularly in class actions); *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 WL 1995314,

at *3 (M.D.N.C. May 6, 2019) (citing 4 Newberg on Class Actions § 13:44 (5th ed.)).

Parties settling a class action must seek approval of the settlement from the Court. FED. R.

CIV. P. 23(e). Under Rule 23(e)(2), at the final approval stage, the Court ultimately must determine

that the settlement is "fair, reasonable, and adequate." *See In re MicroStrategy, Inc. Sec. Litig*., 148

F. Supp. 2d 654, 663 (E.D. Va. 2001) (*citing In re Jiffy Lube*, 927 F.2d at 158–59). The Court has

broad discretion in evaluating a class action settlement and its decision to approve a settlement will

be reversed only for an abuse of discretion. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 (4th Cir. 1975)

Notwithstanding its discretion, the Court's evaluation of the Settlement is guided by the following

"presumptions and rules:" "that settlement is favored; that a settlement reached at arms-length is

presumed to be fair; [and] that a court must accept or reject the settlement but cannot rewrite it."

Newberg on Class Actions § 13:43 (5th ed. 2016). For the reasons that follow, approval of the

Settlement Agreement is warranted.

### 1.    <u>The Proposed Settlement Was Honestly and Fairly Negotiated</u>.

"In order to determine whether a proposed settlement is fair to the parties, courts consider:

(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had

been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of

counsel in the type of case at issue." *McLaurin*, 2011 WL 13146422 at *3 (*citing In re Jiffy Lube*,

927 F.2d at 158–59). The primary concern is "the protection of class members whose rights may not

have been given adequate consideration during" settlement negotiations. *In re Jiffy Lube*, 927 F.2d

at 158.

Here, the Parties are represented by experienced counsel specializing in the type of wage and

hour claims alleged in the action. *See* Exhibit 2 ¶ 3. The Parties investigated the merits of the claims

and Defendant's defenses and engaged in mediation with a retired federal magistrate judge.[1]  Prior to mediation, the Parties debated the claims, and exchanged informal discovery and information in order to evaluate the potential claims. Defendant produced all necessary class-wide data in order for Plaintiff to calculate class wide damages, which Plaintiff shared with Defendant prior to the mediation. Following a full-day mediation session, the Parties' counsel negotiated the full and final settlement terms at arms-length during the following months that was later modified with additional input from the Court.  There can be no doubt that the Settlement was honestly and fairly negotiated, and not the product of collusion. All Parties were in a sufficient position to evaluate the merits and defenses, and vigorously debated their positions during the all-day mediation. As such, this Court should find the settlement was reached fairly between the Parties. *See In re Jiffy Lube*, 927 F.2d at 159 (affirming class action settlement as fair even though settled early in litigation prior to formal discovery because of the parties' informal discovery and experience of counsel); *see also Rechtoris v. Dough Mgmt., Inc.*, No. 3:18CV708-PPS/MGG, 2020 WL 1041489, at *2 (N.D. Ind. Mar. 3, 2020) (recent FLSA and Rule 23 settlement finally approved for similar claims and structure even when no additional contingent fund was negotiated); *Breit v. GBR Pizza, Inc.*, No. 5:19-cv-257 (E.D.N.C. Feb. 24, 2020) (recent hybrid FLSA and Rule 23 settlement finally approved for similar claims and structure even without both the minimum payment and contingent funds provided for here).

2.    <u>**Serious Questions Of Law And Fact Exist, Placing The Ultimate Outcome Of This Action In Doubt**</u>.

The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. *Flinn*, 528 F.2d at 1172. Accordingly, courts "weigh the likelihood of the

---

[1] Conducting mediation before a third-party mediator helps ensure no collusion and an arms-length negotiation. *Hainey v. Parrot*, 617 F.Supp.2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) ("In general, a settlement arrived at after arm's length bargaining may be presumed to be fair.").

plaintiff's recovery on the merits against the amount offered in settlement." *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (internal quotation marks omitted). In weighing the likelihood of success, the Court should not "decide the merits of the case or resolve unsettled legal questions." *In re India Globalization Capital, Inc., Derivative Litig.*, DKC 18-3698, 2020 WL 2097641, at *4 (D. Md. May 1, 2020) (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). Rather, the Court should find in favor of final approval of the settlement when the possibility of plaintiff's litigating the case is highly uncertain and would involve expensive, time-consuming continued litigation, whereas the overall value of the settlement is significant. *Weaver v. AEGON USA, LLC*, 4:14-CV-03436-RBH, 2015 WL 5691836, at *14 (D.S.C. Sept. 28, 2015), *modified*, 4:14-CV-03436-RBH, 2016 WL 1570158 (D.S.C. Apr. 19, 2016).

The complexity, expense, and likely duration of this litigation also weighs heavily in favor of the Court finding that the settlement is adequate, fair and reasonable. To continue through trial would expose the Parties to significant risks. *See* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed.2002) ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). Plaintiff believes that her claims are strong but recognizes that success is not guaranteed. Plaintiff believes Defendant violated the FLSA and state law by failing to pay her and other similarly situated Delivery Drivers the federal minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendant. Defendant, however, contends that its reimbursements to Delivery Drivers are reasonable approximations of their automobile expenses and do not cause Delivery Drivers' wages to fall below the federal minimum wage. Defendant is also confident that Plaintiffs would ultimately not prevail in certifying the class because individualized inquiries would be necessary to determine the Class Members' damages. Nonetheless, while Defendant believes that its defenses are strong, they

recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides. Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages.  First, the Parties dispute whether the three-year limitations period under the FLSA applies, whether the two-year period for non-willful violations under the FLSA would be applicable in this matter.  Second, Defendant contends its actions were at all times taken in good faith, negating the FLSA's liquidated damages provision.  Third, Defendant disputes that class or collective action treatment is appropriate in this case.  Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

### 3.    The Class Recovery is Substantial and Adequate.

The adequacy prong requires consideration of: "(1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159. Further, in deciding whether a settlement is fair, reasonable, and adequate a factor Courts consider is whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *In re MI Windows & Doors, Inc., Products Liab. Litig.*., 860 F.3d 218 (4th Cir. 2017); *Brown v. Transurban USA, Inc*., 318 F.R.D. 560, 580 (E.D. Va. 2016). A finding that the value of an immediate recovery outweighs the possibility of future relief can be made after a competent evaluation of the case by counsel. *Brown*, 318 F.R.D. at 580. The benefit of a proposed settlement framework outweighs the value of any remedy that litigation might produce. *See Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417, 425 (4th Cir. 2003); *Brown*, 318 F.R.D. at 580.  The issues here are complex and would be vigorously contested, resulting in significant time and expense if the

litigation continues. Barring a settlement, the parties will engage in additional discovery, including of their respective experts. The Parties would also have to engage in extensive motions practice including completing briefing on Plaintiff's Motions for Collective and Class Certification and Approval of Notice, as well as Defendant's Motion to Decertify the Class, if the Court does certify a class, and Motions for Summary Judgment as to various issues in the case. The trial would include testimony by representatives of the Defendant, Class Members, and expert witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation.

Given these risks, further litigation could result in no recovery for Class Members or a significant judgment against Defendant which could bankrupt it, leaving nothing for the Class Members to recover.  Based on these circumstances, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." *In re MicroStrategy*, 148 F. Supp. 2d at 667 (quoting *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971)). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be approved.

### 4.    <u>Counsel Believe The Settlement Is Fair And Reasonable.</u>

Counsel for both sides fully support the Settlement Agreement, and in deciding whether a proposed settlement warrants approval the informed and reasoned judgement of counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference. *See Flinn*, 528 F.2d at 1173; *Brunson v. Louisiana-Pac. Corp.*, 818 F. Supp. 922, 927 (D.S.C. 2011); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 855 F. Supp. 825, 831 (E.D.N.C. 1994). When evaluated in light aforementioned factors identified by this Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

### B.    Standard for Approval of FLSA Settlements.

As stated above, the settlement provides relief for the individuals who have affirmatively

opted-in to this matter pursuant to the FLSA's collective action procedures. For many of the reasons stated above regarding settlements under Rule 23, the settlement is a fair and adequate resolution under the FLSA and ought to be approved.

In a lawsuit brought by an employee against his or her employer under § 216(b), the employee may settle and release FLSA claims if the parties present to the court a proposed settlement and the court approves the settlement. *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1353 (11th Cir.1982)). The Settlement should be approved when it is a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *Id.*

As explained above, the Parties are represented by experienced and competent counsel and the Parties engaged in extensive negotiations.  In addition, counsel for the Parties have discussed at considerable length Plaintiffs' assertions and Defendant's defenses, and their respective legal theories in support of their positions.  This settlement of these claims results from a compromise between the Parties on a variety of *bona fide* disputes regarding issues of law and fact, including the applicable reimbursement rate and the propriety of Defendant's use and application of a tip credit. The Settlement occurred only after discovery, including production of payroll and reimbursement records to facilitate both Parties' ability to make detailed legal and factual analyses of the claims and defenses, arms-length negotiation between Plaintiffs' counsel and Defendant's counsel, and a full-day mediation with the Honorable Braford Stillman who is both a retired federal magistrate judge from this Circuit and mediator experienced in resolving wage & hour disputes under the FLSA. The Parties stipulate that they are resolving the matter to avoid unnecessary further costs, time, and risks associated with continuing this litigation.  The Parties also considered the inherent risks in bringing the matter to trial, judicial resources, and the costs and time associated with further litigation and determined a settlement would be in the public's interest.

The Settlement negotiated in this case reflects a reasonable compromise of the disputed

issues and other relevant considerations. All Parties, through their attorneys, voluntarily agreed to the terms of the Settlement during negotiations. All Parties were counseled and represented by their respective attorneys throughout the litigation, negotiation, and settlement process. The Settlement amounts apportioned to the different Opt-Ins will take into account and be apportioned based on the specific number of miles driven and rate of reimbursement of each Opt-In. Counsel for all Parties agree that, in their respective opinions, the settlement is fair and reasonable under the circumstances. Because the Settlement agreed to by the Parties is a fair and equitable compromise of a *bona fide* dispute, the Parties request that the Court approve the Settlement and enter a final judgment dismissing the case, in its entirety, with prejudice.

  **C.**  **Attorneys' Fees and Costs Provided in the Settlement are Appropriate.**

  Class Counsel is entitled to recover attorney's fees and costs under the federal Fair Labor Standards Act where Plaintiff is a prevailing party, 29 U.S.C. §201, *et seq.*, (the "FLSA"). Moreover, even in the absence of a statutory entitlement to attorney's fees and costs, Class Counsel is entitled to a fee/cost award under the equitable common fund doctrine, which entitles a litigant or a lawyer who recovers a common fund for the benefit of persons other than herself or his client to reasonable attorney's fees from the fund as a whole. *Boeing Co. v. Gemert*, 444 U.S. 472, 478 (1980).

  Courts in the Fourth Circuit have discretion to calculate awards of attorneys' fees by using either a percentage of the fund calculation or lodestar/multiplier approach. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). Under either approach, as set forth below, and because the standard merely requires the award "be reasonable under the circumstances," the requested fees should be approved. *In re Dollar Gen. Stores FLSA Litig.*, No. 5:09-MD-1500, 2011 WL 3904609, at *3 (E.D.N.C. Aug. 23, 2011); *Jacksonville Prof'l Fire Fighters Ass'n Local 2961, IAFF v. City of Jacksonville*, 685 F. Supp. 513, 526 (E.D.N.C. 1987).

  **1.**  **The Requested Attorney's Fee Should Be Approved as Reasonable when Viewed as a Percentage of the Total Settlement Fund.**

"In class action cases, counsel who recover a common fund settlement . . . are entitled to reasonable attorney's fees paid from the fund." *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 464 (E.D. Pa. 2008). Judge Posner, in a case addressing class counsel's entitlement to fees from a common settlement fund, has cogently summarized the equitable and economic principles underlying class counsel's entitlement to a fair fee:

> The object in awarding a reasonable attorney's fee, as we have been at pains to stress, is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible. It is infeasible in a class action because no member of the class has a sufficient stake to drive a hard – or any – bargain with the lawyer. So the judge has to step in and play surrogate client.

> ***

> The judicial task might be simplified if the judge and the lawyers bent their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character. This was a contingent fee suit that yielded a recovery for the "clients" (the class members) of $45 million. The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client. Suppose a large investor had sued Continental for securities fraud, and won $45 million. What would its lawyers have gotten pursuant to their contingent fee contract? We know that in personal-injury suits the usual range for contingent fees is between 33 and 50 percent but we also know that in large commercial litigation with prospects of multimillion dollar recoveries the percentage frequently is tapered – it might be 33 percent of the first million, 25 percent of the next million, and so on down. The class counsel did not present and the judge did not ask for testimony or statistics concerning the fee arrangements in commercial litigation comparable to the present suit. Yet it might be quicker and easier to generate such evidence than it would be to hassle over every item or category of hours and expense and what multiple to fix and so forth.

*In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572-73 (7th Cir. 1992).

Courts also have recognized that common fund recoveries based on contingency fee representation are especially beneficial to employee plaintiffs who may not possess the financial resources to hire counsel on an hourly basis to pursue their claims:

> Common fund recoveries are contingent on a successful litigation outcome. Such contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve

14

without compensating attorneys for that risk. Many individual litigants, including the class members here, cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation.

*Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, *8 (S.D.N.Y. Oct. 5, 2012) (internal citation and quotation omitted); *see also Brundle on behalf of Constellis Employee Stock Ownership Plan v. Wilmington Trust, N.A.*, 919 F.3d 763, 785 (4th Cir. 2019) (recognizing that the employee that benefits from a lawsuit without contributing to its costs, would be unjustly enriched at the successful lawyer's expense).

Here, application of the percentage of recovery method supports Class Counsel's request. The Settlement allocates fees of one-third the Total Settlement Amount. This percentage recovery falls well within the range that is regularly approved by courts, including in analogous pizza delivery driver cases. *See, e.g., Otis v. TAH Pizza, Inc. et al dba Domino's*, 2:18-cv-00111-HSM-MCLC (E.D. Tenn.) (40%); *Chenkus v. Prairie Pizza, Inc. dba Domino's*, 3:17-cv-00723 (W.D.N.C.) (33.3%). Application of the "percentage of recovery" method supports Class Counsel's requested fee recovery.

### 2.    The Requested Fee Should Also Be Approved as Reasonable in Light of Additional Factors.

#### a.    The Value of the Benefit Rendered to the Plaintiff Class.

The settlement represents a significant recovery on behalf of the class. Had Defendant defeated Plaintiff's motion for Rule 23 class certification, this case would only have proceeded on behalf of significantly fewer individuals.[2]  If the settlement is approved by the Court, all Class Members will receive compensation. Moreover, individuals will still be able to affirmatively opt-in or claim funds for an additional three years from the Contingent Fund. Thus, the "value of the benefit rendered to the plaintiff class" factor supports the proposed fee award.

---

[2]  It is likely that the participation would have been limited to the less than 15% of Settlement Class Members who affirmatively chose to opt-in as FLSA Class Members.

**b.      The Value of the Services on an Hourly Basis.**

Collective and class action litigation is time consuming and requires a substantial commitment of time and resources, including advancing all litigation costs. Class Counsel also accepted this case on a contingency basis with no guarantee of payment. Despite receiving no payment for their work to date in this case and even when no accounting is done for time to be incurred throughout the extended Contingent Fund period, Class Counsel's lodestar crosscheck is already well below the range typically viewed as reasonable.[3] *Fangman v. Genuine Title, LLC*, CV RDB-14-0081, 2017 WL 2591525, at *6 (D. Md. June 15, 2017) (lodestar multipliers up to 4.5 reasonable). Accounting for estimated time still to be incurred to fully and finally prosecute this matter, this multiplier will continue to decrease.[4] The attorneys' fee request is justified in light of the value of the services rendered and to be rendered on an hourly basis.

**c.      Whether the Services Were Undertaken on a Contingent Fee Basis.**

Class Counsel represented Plaintiff on a contingency fee basis.  If Plaintiff did not ultimately prevail, Class Counsel would have not recovered any of the incurred fees and out-of-pocket costs. Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case.  Access to the courts would be difficult to achieve without compensating attorneys for that risk."  *In re Abrams*, 605 F.3d 238, 245–46 (4th Cir. 2010).  Many lower wage workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation."  *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990).  Also, "[t]here is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no

---

[3]  The fee request divided by the total of the hours incurred to date multiplied by Counsel's recently approved hourly rate results in a lodestar below 1.5.
[4]  Including anticipated time to be incurred, Counsel's anticipated lodestar is below 0.9.

16

payment for his time and efforts." *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, *6 (D. Colo. Nov. 13, 2013). In sum, the risk associated with the contingency fee arrangement here augurs for Court approval of the fee award sought. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1151 (D. Colo. 2009) ("A contingent fee . . . is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful.").

> **d.      Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain an Incentive to Others**

Courts have recognized that "society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, *14 (S.D. Ohio June 24, 2011). Additionally, the remedial nature of the FLSA relies on attorney representation for low wage workers like the pizza delivery drivers involved here. Without enforcement of the FLSA's attorneys' fees provision through cases – and motions – like this one, many workers would be left without recourse.

> **e.      The Complexity of the Litigation**

Two of the fundamental questions in this case were: (i) whether Plaintiff was entitled to and did in fact receive reimbursement compensation at or reasonably approximating IRS proscribed rates or whether Defendant was permitted to and did in fact reimburse Plaintiff based on a reasonable approximation of her vehicle-related expenses; and (ii) whether these questions could be resolved on a class or collective action basis. Analysis of these questions and effective prosecution of the class claim required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA and FED. R. CIV. PROC. 23, which is uniquely possessed by Plaintiff's counsel. *See generally*, Exhibit 2. In sum, the complexity of the litigation, along with numerous other factors, supports the proposed fee award.

> **D.      The Modest Service Payments Are Appropriate.**

Services payments "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 722 (7th Cir. 2001); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271(LTS), 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) ($10,000.00 award); *Chenkus v. Prairie Pizza, Inc. dba Domino's*, 3:17-cv-00723 (W.D.N.C.); *Marnoch and Breit v. GBR Pizza, Inc. et al*, Case 5:19-cv-257 (E.D.N.C.). The modest service payment sought for the Named Plaintiff and early opt-in plaintiffs (the "Class Representatives") should not only be approved because they are well within the limits of awards approved in various districts and related cases, but also because these individuals substantially assisted counsel in achieving this Settlement on behalf of the Class Members. *See* Exhibit 2 ¶ 9. Therein, they advocated for *all* of the delivery drivers and there is no question that the other delivery drivers have substantially benefited from these actions. Without such efforts, this case would not have been brought and this settlement would not have been achieved. *See id.* Therefore, payment of the service awards, as agreed by the Parties, is justified.

## **CONCLUSION**

The Settlement is fair, adequate, and reasonable. It will result in considerable payments to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation and through the assistance of an equally experienced mediator. For the foregoing reasons, the Parties respectfully request that the Court finally approve the Settlement.

RESPECTFULLY SUBMITTED,

*/s/* Gregg C. Greenberg

Gregg Greenberg, Esq. (#79610)
ZIPIN, AMSTER & GREENBERG

18

8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910
Phone: (301) 587-9373
ggreenberg@zagfirm.com

Jay Forester
Texas State Bar No. 24087532
**FORESTER HAYNIE PLLC**
400 N. St. Paul Street, Suite 700
Dallas, TX 75201
Phone: (214) 210-2100
Fax: (214) 346-5909
Email: jay@foresterhaynie.com

**Attorneys for Plaintiff and the Proposed Class**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Defendants through defense counsel and, pursuant to terms of the Settlement Agreement, Defendants do not oppose this Motion or the relief sought.

/s/ J. Forester
Jay Forester

## CERTIFICATE OF SERVICE

This is to certify that the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to the appropriate CM/ECF participants.

/s/ Gregg C. Greenberg
Gregg Greenberg